IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER TODD BOUDREAU,<br><br>Defendant. | CR 22–46–M–DWM<br><br><br><br>ORDER |

Boudreau moves to suppress evidence found during law enforcement's search of his residence under Federal Rules of Criminal Procedure 12(b)(3)(C) and 41. (Doc. 66.) The government opposes. (Doc. 84.) A motions hearing was held on June 15, 2023. (*See* Doc. 94.) Because probable cause existed to warrant a search of Boudreau's residence, the motion is denied.

On October 6, 2022, Defendant Christopher Todd Boudreau was indicted on one count of attempted coercion and enticement, *see* 18 U.S.C. § 2422(b), and one count of possession of child pornography, *see id.* § 2252(a)(5)(B). (Doc. 1.) Between July 20, 2022 and July 28, 2022, Boudreau corresponded via Facebook Messenger and SMS with what he believed to be a 12-year-old girl named "Mia." (*See* Doc. 78.) Mia is not a real person but rather an alias used by Detective Travis Wafstet of the Missoula County Sheriff's Office. On the final day of their

1

communication, Boudreau was apprehended by Missoula County law enforcement when he arrived at a location where he thought he would be meeting with "Mia." (*See* Doc. 83.) After waiving his *Miranda* rights, Boudreau openly discussed his communications with "Mia," admitting to talking with "Mia," and to his belief as to her age. (*Id.*) After the interview, he was promptly arrested and under suspicion of committing sexual abuse of children, Mont. Code Ann. § 45–5–625. (*Id.*)

The same day, Wafstet applied for a search warrant to search Boudreau's residence. The facts establishing probable cause for the warrant were provided in a detailed affidavit from Detective Wafstet that laid out the history of the interactions between Boudreau and "Mia" and why there was probable cause that further evidence that Boudreau committed the crime of sexual abuse of children, Mont. Code Ann. § 45–5–625, was in his residence. (*See* Doc. 67-1 at 1–11). Relevant excerpts are provided below.

The juvenile profile named "Mia" first received a "friend request" and a direct message from Boudreau via a website. (*Id.* at 2.) Boudreau and "Mia" quickly exchanged cell phone numbers and began messaging via SMS. Within the first few messages sent, Boudreau indicated he is older than her and "Mia" made clear that she was 12 years old. (*Id.*) Boudreau responded that "Mia's" age was not an issue for him "as long as you're cool and we take our time. Doesn't bother me. I'm a very good natured and loyal person." (*Id.*)

2

On July 28, 2022, the same day that Boudreau was apprehended, Judge Leslie Halligan of Montana's Fourth Judicial District issued a search warrant for Boudreau's home. (Doc. 67-1 at 16–19.) In ordering the warrant, Judge Halligan "found that sufficient probable cause exists to believe that the aforementioned crime(s) have been committed" and ordered Detective Wafstet to search Boudreau's Anaconda apartment. (*Id.* at 17.) According to the government, the execution of the search warrant at Boudreau's residence led to the discovery of "thousands of images and videos of child pornography," (Doc. 84 at 2.)

Boudreau argues that the warrant was improper and that probable cause did not exist sufficient to search his home because "all the evidence in this case which led to the Indictment demonstrates that Mr. Boudreau sent 'Mia' SMS text messages from his personal cell phone" and not his home computer.[1] (Doc. 67 at

---

[1] At the June 15 hearing, Boudreau made an impromptu motion under *Franks v. Delaware*, 438 U.S. 154 (1978). "*Franks* sets forth the standard by which a defendant may overcome the 'presumption of validity with respect to the affidavit supporting the search warrant.'" *United States v. Fisher*, 56 F.4th 673, 679 n.7 (9th Cir. 2022) (quoting *Franks*, 438 U.S at 171). "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (internal quotation marks omitted). Boudreau has made no showing apart from baseless allegations that the affiant officer, Detective Wafstet, made any false or misleading statement in support of the warrant, let alone statements that were made with intent to mislead. Even if he had, the statements Boudreau alleges were misleading—that Detective Wafstet omitted evidence about Boudreau's computer use gleaned from the law

3

6–7.) He further argues that the "warrant's probable cause was improperly based on an illegal trolling expedition." (*Id.* at 11.) The government disagrees arguing that sufficient probable cause existed for a warrant to issue because (1) Boudreau communicated with "Mia" via *both* social media and text message, which he did via the internet from his home, and (2) because he was being investigated for a crime that is more broad than merely the communication evidenced by the messaging, namely sexual abuse of a minor. The government is correct.

The Fourth Amendment provides, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In determining whether a search warrant was based on probable cause, a reviewing court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). "A warrant must be supported by probable cause—meaning a fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances." *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) (internal quotation marks omitted). The probable cause determination of a judge issuing a warrant "should be paid great deference

---

enforcement interview—were not "necessary to finding probable cause" because there was sufficient evidence from the messages themselves, an accurate description of which were included in the affidavit. *See Norris*, 942 F.3d at 910.

4

by reviewing courts." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Review "is limited to ensuring that the [issuing judge] had a 'substantial basis' for concluding that probable cause existed." *Id.* at 708 (quoting *Gates*, 462 U.S. at 238). "[T]he nexus between the items to be seized and the place to be searched can rest on normal inferences as to where a criminal would be likely to hide evidence of his crimes." *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal quotation marks omitted). Cybercrime, such as child pornography offenses' "reliance on computers and personal electronic devices—is relevant to probable cause for searching the suspect's residence." *Id.* at 1085–86.

Here, Detective Wafstet declared by affidavit that he believed Boudreau "used a computer and electronic devices" at his home "to communicate with a purported child [and] likely has a sexualized interest in children and depictions of children, and that evidence of child pornography and additional child enticement is likely to be found at the residence described herein." (Doc. 67-1 at 9.) Judge Halligan properly relied on further inferences provided in Detective Wafstet's affidavit including that: (i) Boudreau had expressed his sexual desire and interest in minors on many occasions; (ii) he had used a smartphone and the internet to communicate with a minor in regards to those sexual interests; (iii) he made at least some of these communications at his residence, including photos sent to "Mia" presumably taken at his home; and (iv) Boudreau's acknowledgement that

5

he had a computer in his home and Detective Wafstet's assertion that based on his knowledge, training, and experience, computers are often used to act upon such sexual interest. (*See id.* at 1–9.)

Although Boudreau is correct that most of the communication between himself and "Mia" were done via SMS from his smartphone, he initially began the communications using social media. (*Id.* at 2.) Detective Wafstet declared in his affidavit that mobile applications and websites can be "accessed from mobile devices or laptop and desktop computers," (*Id.* at 4), and that these apps often have "cross platform capability for use on mobile devices and any other internet enabled device including computers," (*Id.* at 8). Thus, Detective Wafstet had a reasonable belief that the communications could have originated from either a computer or a smartphone.

As the government points out, if Detective Wafstet's affidavit did not evidence any connection to his communication via internet-enabled technology, Boudreau's argument may be stronger. *See Dougherty v. City of City of Covina*, 654 F.3d 892, 898-9 (9th Cir. 2011) (finding that warrant to search residence for child pornography lacked probable cause when warrant outlined investigation of defendant that touched a minor student and affidavit did not, for example, contain "evidence of conversations with students about sex acts" or otherwise implicate electronic media). However, that is not the case here as electronic media were

6

implicated throughout both the communication leading up to the meet up with "Mia" and during Boudreau's interview with law enforcement on July 28, 2022.

Although Boudreau makes novel arguments about the specific wording of the warrant and how it should be read narrowly under the rule of lenity, (*see* Doc. 67 at 11 (citing *United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017)), those arguments are not substantively supported by any relevant fourth amendment authority. Thus, because "great deference" must be paid to a judge's probable cause determination, the government is correct that Judge Halligan reasonably relied on Detective Wafstet's assertions viewed as a totality of circumstances to find that an appropriate nexus existed between the affidavit and Boudreau's residence. *See King*, 985 F.3d at 707.

Accordingly, IT IS ORDERED that Boudreau's motion (Doc. 66) in DENIED.

DATED this 15th day of June, 2023.

_____
Donald W. Molloy, District Judge
United States District Court

7