IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 22–46–M–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| CHRISTOPHER TODD BOUDREAU, | |
| Defendant. | |

On October 6, 2022, Defendant Christopher Todd Boudreau was indicted on one count of attempted coercion and enticement, *see* 18 U.S.C. § 2422(b), and one count of possession of child pornography, *see id.* § 2252A(a)(5)(B). (Doc. 1.) Boudreau timely filed two motions in limine, (Docs. 70, 74), and untimely filed a third on the morning of the June 15, 2023 motions hearing, (Doc. 91). Despite the untimeliness of the third motion, it concerns similar subject matter as the first motion and was addressed by the parties at the June 15 hearing; it is therefore addressed herein. Ultimately, Boudreau seeks prevent the government from presenting evidence as to an order protection and various statements he made to law enforcement at trial, which is set for July 24, 2023. (Doc. 98.) His motions are granted in part and denied in part as explained below.

1

## BACKGROUND

Based on the charging documents and the government's filings in the case, the underlying facts are as follows. Between July 20 and July 28, 2022, Boudreau corresponded via Facebook Messenger and text message with what he believed to be a 12-year-old girl named "Mia." (Doc. 79 at 2–3.) Unbeknownst to Boudreau, "Mia" was a law enforcement sanctioned undercover profile being used by the Missoula County Sherriff's Office to conduct undercover operations. (*Id.*) On July 28, 2022, Boudreau traveled to Missoula from his home in Anaconda to meet "Mia" but instead was met by law enforcement agents, who subsequently read him his *Miranda* rights and interviewed him.[1] (Doc. 83.) During the interview, Boudreau freely discussed his communications with "Mia" as well as other topics including the termination of his parental rights for each of his three children. (*Id.*) Following the interview, Boudreau was arrested. (*Id.*) Later that day, law enforcement secured a search warrant for Boudreau's residence where they found child pornography. (*See* Doc. 67-1.)

## LEGAL STANDARDS

Evidence "of prior crimes and bad acts can be admitted under [Federal Rule of Evidence] 404(b) if it is to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake and not to show bad character." *United*

---

[1] A recording of the interview was filed and reviewed by the Court. (*See* Doc. 83.)

*States v. Houser*, 929 F.2d 1369, 1373 (9th Cir. 1990), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001).  This evidence is admissible if at least one of these purposes is identified and the government demonstrates that "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant actually committed the other act; and (4) . . . the act is similar to the offense charged," but only if the evidence is being admitted to prove intent.  *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) (citing *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)).  But "[e]vidence of other acts is not subject to Rule 404(b) analysis if it is inextricably intertwined with the charged offense."  *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (internal quotation marks omitted).  This exception applies when either the other acts are both parts of "a single criminal transaction" or when they are needed for the "prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  *Id.*

Nevertheless, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which is it relevant."  Fed. R. Evid. 414(a).  "This creates an exception to the general rule [under Rule 404(b)] that prior bad acts cannot be introduced against a defendant at trial to show that he committed the charged crime."  *United States v. Halamek*, 5

F.4th 1081, 1089 (9th Cir. 2021); *see United States v. Hanson*, 936 F.3d 876, 881

(9th Cir. 2019).   In either case, however, evidence found admissible both under

Rules 404(b) and 414 is still subject to Rule 403 balancing.   *United States v.*

*Curtin*, 489 F.3d 935, 943–44 (9th Cir. 2007) (Rule 404(b));   *Halamek*, 5 F.4th at

1089 (Rule 414).

ANALYSIS

Boudreau's first and third motions in limine seek to exclude Rule 404(b)

evidence related to an order of protection obtained by a 17-year-old female against

Boudreau in July 2022.  (Docs. 70, 91.)   Boudreau's second motion in limine

seeks to exclude five statements made by Boudreau during the July 28, 2022 law

enforcement interview.  (Doc. 74.)   He argues in each motion that Rules 401, 403,

404(b), and 414 preclude admission of the evidence.   The government opposes.

The motions are denied in part and granted in part as outlined below.

**I.      First and Third Motions in Limine (Docs. 70, 91)**

Boudreau's first and third motions in limine seek to exclude evidence of a

July 2022 order of protection.  (Docs. 70, 91.)   The government timely noticed

Boudreau of its intention to offer evidence under Rules 404(b) and 414 of an order

of protection taken out by Jane Doe and her family against Boudreau in July 2022.

(Docs. 61, 78); *see* Fed R. Evid. 404(b)(3) ("In a criminal case, the prosecutor must

. . . provide reasonable notice of any [Rule 404(b)] evidence that the prosecutor

4

intends to offer at trial . . . ."); *id.* 414(b) ("If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant [prior to trial]. . . ."). Here, the intended Rule 404(b) purposes are motive, intent, lack of mistake, and plan. (Doc. 61 at 1.) In summer 2022—when Doe was a 17-year-old minor— Boudreau and she began to spend time together. (Doc. 78 at 2.) In July 2022, Boudreau "asked Jane Doe to send him nude photographs of herself via social media." (*Id.*) When she did not oblige, Boudreau continued to stalk and harass her online, and Doe sought an order of protection against him, which was granted. At the June 15 hearing the government clarified that it did not intend to introduce any additional evidence regarding the actual order of protection.

## A.    Rule 414

The government first argues that the order of protection evidence is admissible for any purpose under Rule 414. Boudreau argues that the Rule does not apply here. He is correct. Rule 414 states that a court "may admit evidence that the defendant committed any other child molestation" and defines child molestation as any federal or state crime prohibited under, relevantly, 18 U.S.C. chapter 110 (§§ 2251–2260A). The government argues that because Count 2 charges possession of child pornography in violation of 18 U.S.C. § 2252A, an 18 U.S.C. chapter 110 crime, evidence of the order of protection is admissible. However, under Rule 414, the relevant question is whether the *other evidence*

meets the definition of child molestation under the Rule, not whether the charged
crime involves child molestation. Here, the other evidence does not, namely
because the civil order of protection is not a federal or state crime. Thus, this
evidence is inadmissible under Rule 414.

**B.    Rule 404(b)**

The government next argues that the evidence is admissible under Rule
404(b) for the purposes of showing motive, intent, lack of mistake, and plan.
Boudreau insists no non-propensity purpose exists. Boudreau is correct as to plan
but incorrect as to the remaining purposes. *See Lague*, 971 F.3d at 1038 (outlining
the four-factor test under that Rule).

First, both Counts 1 and 2 require the government to prove intent to engage
in activity regarding sexual abuse of minors. *See* 18 U.S.C. §§ 2422(b)
(prohibiting "knowingly" attempting to entice a minor to engage in a sexual
activity), 2252A(a)(5)(B) (prohibiting "knowingly" possessing child pornography).
Where, as here, crimes require the government to prove a knowing mental state,
the government must precisely explain the hypothetical "logical connection"
between the other acts and the fact at issue in the instant matter. *United States v.
Mayans*, 17 F.3d 1174, 1182–83 (9th Cir. 1994).

The government has demonstrated how all four *Lague* factors are met. For
the enticement charge (Count 1), the government has shown that the order of

6

protection evidence tends to prove a material point and is similar to acts charged here. Boudreau has made clear in his motions to dismiss for outrageous conduct, (*see* Docs. 49, 64), his pre-arrest interview with law enforcement, (*see* Doc. 83), and at the June 15 hearing that he intends to offer his lack of sexual interest in "Mia" as a defense. Specifically, that he wanted to spend time with "Mia" in a platonic manner and that it was "Mia," not Boudreau, who was interested in the sexual activity. The government notes that it plans to use this evidence to establish Boudreau's intent, motive, and lack of mistake by showing that because he knew that it was wrong to harass a minor into sending him nude photos, it would also be wrong to meet up with a minor to engage in activity that may be deemed sexual.

Similarly, Count 2 requires that the government prove Boudreau knowingly possessed child pornography. The fact that he was alleged to have engaged in the stalking and solicitation of pictures from a minor using the Internet during this period is highly relevant as to his intent, motive, and lack of mistake. And, although the order of protection is not a criminal act, it does involve conduct related to a minor that is sexual in nature and thus is similar to the offense charged. Thus, the government has demonstrated that the order of protection evidence tends to prove a material point for both Counts 1 and 2 because it evinces both Boudreau's intent and motive to commit the offense conduct and knowledge that the conduct was illegal, and thus a lack of mistake.

Second, the prior acts are not too remote in time because they both occurred

in July 2022, the same month as the charged conduct. (*See* Doc. 1.) Third, the

evidence is sufficient to support a finding that the Defendant committed the prior

act because "the act occurred and that the defendant was the actor." *Huddleston v.*

*United States*, 485 U.S. 681, 689 (1988). Thus, the evidence noticed by the

government on May 17, (Doc. 61), and June 5, (Doc. 82), is admissible under Rule

404(b) to prove Boudreau's intent, motive, and lack of mistake.

## C.     Rule 403

This evidence may still be limited under Rule 403 if "its probative value is

substantially outweighed" by the risk of unfair prejudice. Boudreau argues that

admitting this evidence at trial will be unfairly prejudicial because it "will create a

harassment and stalking trial" within these proceedings. (Doc. 71 at 5.) This

presumption, much like many of his other claims, rests on illusory conclusions and

lacks substantive merit. At the June 15 hearing, the government committed to not

creating a sideshow by trying to prove any underlying criminal conduct related to

the order of protection. And, since this evidence is only admissible under Rule

404(b) for the specific purposes discussed above, there is a lessened risk of unfair

prejudice. *Halamek*, 5 F.4th at 1089. On the other hand, the evidence has

substantial probative value as it is being offered to help prove Boudreau's intent,

8

motive, and knowledge to commit each offense charged.  That probative value is

not substantially outweighed by a risk of unfair prejudice.

## II.     Second Motion in Limine (Doc. 74)

In his second motion in limine, Boudreau seeks to exclude the following

evidence:

> (1) Evidence that Mr. Boudreau has "bondage equipment" in his
> Anaconda home;
> (2) Evidence that Mr. Boudreau has "sex toys" in his home;
> (3) Evidence that Mr. Boudreau has watched "pornography" in the
> privacy of his home;
> (4) Evidence that Mr. Boudreau's parental rights are terminated;
> (5) Evidence that Mr. Boudreau's daughter claimed he had touched her
> inappropriately, which allegation was proven to be false following a
> forensic examination by law enforcement.

(Doc. 74 at 1–2.)  Boudreau argues that the evidence is unduly prejudicial, not

relevant, and does not serve any permissible Rule 404(b) purpose.  The

government contends that the evidence is inextricably intertwined with the charged

offense and admissible under Rule 404(b).  Neither party is completely correct; for

the reasons outlined below, the motion is granted in part and denied in part.

### A.     Inextricably Intertwined

The government first argues that statement (3) is inextricably intertwined

with Count 2 and statements (4) and (5) are inextricably intertwined with Count 1.

The government is incorrect.  The alleged offense conduct involves attempted

enticement of a minor and the possession of child pornography.  "Mia" is not one

9

of Boudreau's children and his communications with her do not involve discussion of pornography. And, the government has not demonstrated that the child pornography allegedly possessed by Boudreau includes any videos or images of "Mia." Thus, the statements are not a part of a "single criminal transaction" for either Count 1 or 2. *Wells*, 879 F.3d at 928. Nor are the statements necessary "in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* Under Count 1, the government has already offered a coherent and comprehensible story by presenting the full and total communications made between Boudreau and "Mia." Under Count 2, the government has offered a coherent and comprehensible story by alleging Boudreau possessed child pornography.

## B.    Rule 404(b)

The government next argues that these statements are admissible under Rule 404(b). Boudreau disagrees and again argues that admitting the statements will create individual "mini-trials" that are unrelated to the charges brought. Although not coherently argued by Boudreau, he is correct as to statements (1), (2), and (3) but incorrect as to statements (4) and (5).

### 1.    Statements (1), (2), and (3)

Taking statements (1), (2), and (3) first, the government has failed to demonstrate why evidence concerning Boudreau's possession of sex toys and

bondage equipment and his admission that he watches pornography informs any Rule 404(b) purpose here. In fact, the government has not demonstrated its relevance by showing why it would have "any tendency to make a fact more or less probable than it would be without the evidence."[2] Fed. R. Evid. 401(a). Nevertheless, neither the government nor the record identifies the nature or content of any of the alleged child pornography found at Boudreau's residence. Depending on what is presented at trial, the government may be able to show a connection between Boudreau's sexual interest as reflected in this evidence and the type of child pornography found. If the government intends to present specific evidence to this effect, however, it must do so at least seven days before trial. *See* Fed. R. Evid. 404(b)(3).

## 2. Statement (4)

The government seeks to admit Boudreau's statement that his parental rights have been terminated to reflect his motive to interact with a child who is the same age as his daughter and to demonstrate his intent to meet with that child. For both

---

[2] Although Boudreau seeks to exclude "evidence of" each of these items, the only evidence available to the Court at this time are Boudreau's statements related to them. Thus, the motion is narrowly construed as a motion to exclude these statements. The government is not precluded from offering other evidence at trial regarding bondage equipment, sex toys, or pornography subject to appropriate trial objection.

these purposes, the government has demonstrated its admissibility as to Count 1 but not as to Count 2. *See Lague*, 971 F.3d at 1038.

Boudreau's statement that his parental rights had been terminated tends to prove the material point that Boudreau wanted to spend time with a minor in a similar age group as his daughter. As relevant here "a material fact at issue" is whether Boudreau intended to entice "Mia" into spending time with him for the purpose of engaging in sexual activity. Boudreau told law enforcement that he has three children: a 14-year-old son, a 12-year-old daughter, and a 5-year-old daughter, that his parental rights to see each of his children had been terminated, and that part of why he was seeking time with "Mia" was to spend time in the company of children of similar ages to his own. (*See* Doc. 83.) While this statement does not wholly prove that his intent was sexual in nature, the government has nonetheless made the logical connection that it does "tend to prove a point material" to the charge of enticement of a minor because it helps to demonstrate his motivation for his actions.

It also meets the remaining Ninth Circuit admissibility factors. The statement is "sufficient to support a finding that defendant committed the other act" because it is based off Boudreau's own statement. *Lague*, 971 F.3d at 1038. By Boudreau's own admission, the termination of his rights had happened during the summer of 2022, within a month of when his interactions with "Mia." And, to

12

the extent that the termination of his rights is a "bad act," as is indicated below, at least one of the reasons for the termination related to alleged sexual abuse of a minor, a similar offense to the one charged here.

### 3.      Statement (5)

Finally, the government seeks to admit Boudreau's statement that at least one of the reasons why his parental rights were terminated was the alleged inappropriate touching of his minor daughter's private parts.  The government seeks to use this statement to both "demonstrate his knowledge that his proposed touching in this case would be construed as sexual activity" and to rebut "any claim of mistake or lack of knowledge on Boudreau's part in attempting to engage 'Mia' in this touching."  (Doc. 82 at 11.)  In response, Boudreau recycles the same arguments he made for each of the other statements discussed above.  Ultimately, the government has the better argument as to Count 1 but not as to Count 2.

In his communication with "Mia," Boudreau evidenced an interest in "cuddling" with her, rubbing her stomach, and engaging in sexual intercourse with her.  Boudreau's explanation for the termination of his parental rights tend to prove the material point that he had at least some understanding that any sort of intimate touching of a minor child is improper.  As relevant here "a material fact at issue" is whether Boudreau intended to engage in illegal and inappropriate conduct with "Mia."

13

Without interrogating the truth of Boudreau's statement, the statement still tends to show that he knew that this type of conduct is improper. It also demonstrates a heightened awareness that this type of conduct would be seen by others as sexual conduct. Thus, Boudreau's statement about his daughter's allegation may be used to show that Boudreau would have known "cuddling" with, and rubbing the belly of, a 12-year-old child in a dark movie theater would be seen as improper. (*See* Doc. 80-1 at 39, 112–13.) The government has therefore demonstrated why admitting this statement satisfies the first Rule 404(b) admissibility factor. Because it satisfies the remaining factors for the same reasons as outlined above regarding Statement (4), this evidence is admissible under Rule 404(b).

### C.   Rule 403

Since Boudreau's statements about his relationship with his children are highly probative of his motive, knowledge, intent, and lack of mistake to commit the offense conduct alleged in Count 1, it is necessary to determine whether the risk of unfair prejudice substantially outweighs the probative value. *Curtin*, 489 F.3d at 944. It does regarding statement (5) but not statement (4).

Boudreau made these statements in a recorded and Mirandized interview with law enforcement. He does not dispute that he made the statements but rather the extreme danger that their admission would create a prejudicial sideshow that

14

may lead to an attack on his character. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).  While, Boudreau is correct that the jury is not allowed to take these statements as evidence of his bad character or propensity to commit the alleged offense conduct, that is not the purpose for which the evidence is admitted. And, prejudicial effect stemming from this inclusion may be minimized by a cautionary instruction to the jury. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000).

Even so, the undue prejudice likely caused by statement (5) is greater than that of statement (4).  The fact that Boudreau's parental rights were terminated may be prejudicial, but it carries with it less potential for prejudice than the alleged reason for that termination because it does not directly implicate any bad act that is sexual in nature.  But, the risk of prejudice caused by the allegation that Boudreau inappropriately touched his daughter's private parts is inherently greater and thus substantially outweighs its probative value.  Thus, statement (4) is admissible under Rule 403 while statement (5) is not.  Nevertheless, should Boudreau expound further on these statements at trial, Rule 403 consideration may be rebalanced.

## CONCLUSION

Accordingly, IT IS ORDERED that Boudreau's first and third motions in limine (Docs. 70, 91) are GRANTED IN PART and DENIED IN PART.  They are

DENIED such that the government may present evidence related to the order of protection under Rule 404(b) to demonstrate Boudreau's motive, intent, and lack of mistake to commit Counts 1 and 2.  They are GRANTED in all other respects.

IT IS FURTHER ORDERED that Boudreau's second motion in limine (Doc. 74) is GRANTED IN PART and DENIED IN PART subject to renewal at trial.  It is DENIED such that the government may present evidence related to statement (4) to demonstrate Boudreau's motive and intent to commit Count 1.  It is GRANTED as to statements (1), (2), (3), and (5).

DATED this 27th day of June, 2023.

_____
Donald W. Molloy, District Judge
United States District Court