IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER TODD BOUDREAU,<br><br>Defendant. | CR 22–46–M–DWM<br><br><br><br>ORDER |

On July 26, 2023, a jury found defendant Christopher Todd Boudreau guilty of one count of attempted coercion and enticement of a minor (Count 1) and one count of possession of child pornography (Count 2). (*See* Docs. 1, 134.) Boudreau now moves under Federal Rules of Criminal Procedure 29 and 33 for a judgment of acquittal and for a new trial. (Docs. 149, 150.) The government opposes. (Doc. 163.) Because the government's reasoning is persuasive, the motions are denied.

### BACKGROUND

The factual background in this matter has been thoroughly explained in previous Orders and was explored in detail at trial. (*See* Docs. 155, 156, 157 (trial transcripts).) In brief, the relevant facts are as follows. Between July 20 and July 28, 2022, Boudreau corresponded via Facebook Messenger and text message with what he believed to be a 12-year-old girl named "Mia." Boudreau described in

1

detail the sexual acts he intended to perform on and with her. Unbeknownst to Boudreau, "Mia" was a law enforcement sanctioned undercover profile being used by the Missoula County Sheriff's Detective Travis Wafstet to conduct undercover operations. On July 28, 2022, Boudreau traveled to Missoula from his home in Anaconda to meet "Mia" but instead was met by law enforcement agents, who subsequently read him his Miranda rights and interviewed him. During the interview, Boudreau freely discussed his communications with "Mia." Following the interview, Boudreau was arrested. Later that day, law enforcement secured a search warrant for Boudreau's residence where they found child pornography. (*See, generally* Doc. 155 at 181–275.)

## LEGAL STANDARD

In resolving a motion under Rule 29, a trial court must "[v]iew[] the evidence in the light most favorable to the government, [to] determine whether any rational trier of fact could have found, beyond a reasonable doubt, the requisite elements of the offense charged." *United States v. Labrada-Bustamante*, 428 F.3d 1252, 1260 (9th Cir. 2005). The standard under Rule 33 is broader. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). However, a district court's authority under Rule 33 still "should be exercised sparingly and with caution." *United States v. Lincoln*, 630 F.2d 1313, 1319 (9th Cir. 1980).

## ANALYSIS

2

## I.     Rule 29 Motion

On August 9, 2023, Boudreau timely moved to renew his Rule 29 motion for a judgment of acquittal. (Doc. 149.) He did not file a supporting brief. In the motion, Boudreau argues that the evidence brought by the government was insufficient to sustain a conviction because the government failed to prove the attempt, entice, and state crime elements of Count 1. He does not provide additional argument regarding Count 2. The government persuasively disagrees and is correct.

### A.     Count 1

Federal Rule of Criminal Procedure 29(c)(1) instructs that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict." The crime charged in Count 1 of the Indictment—Attempted Enticement and Coercion in violation of 18 U.S.C. § 2422(b)—requires the government to prove four elements:

> **First,** that on or about July 20, 2022, through July 28, 2022, the defendant knowingly used a means of interstate commerce, including the Internet and a cellular phone, to attempt to persuade, induce, entice, or coerce an individual to engage in sexual activity; and
>
> **Second,** that if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of the State of Montana. In the State of Montana, it is a criminal offense to knowingly have sexual intercourse with another person under 16 years of age, i.e., penetration of the vulva, anus, or mouth of one person by the penis or body member of another person (Mont. Code Ann. § 45-5-503, Sexual Intercourse Without Consent); and

3

**Third**, the defendant believed that the individual he attempted to persuade, induce, entice, or coerce was under the age of 18; and

**Fourth**, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

(Doc. 135 at 17–18 (Final Instruction 16.)

At trial and outside of the presence of the jury, Boudreau made "a motion to dismiss under Rule 29." (Doc. 156 at 210.) In support of his motion, Boudreau argued orally that "the predicate offense was never satisfied," and accordingly "under the statute, you don't go beyond and then you don't consider, well, was there attempted enticement, and then was the internet used or attempted to be used to do so? The predicate offense isn't proven." (*Id.* at 210–11.) He goes on to argue that "[t]here is nothing [Boudreau] did that amounted to sexual intercourse without consent. He didn't touch her. He didn't meet her. She wasn't even real." (*Id.* at 211.) While the argument is hard to follow, Boudreau seems to be arguing that because he did not commit sexual intercourse without consent, and the government did not try to prove that he did, an order of acquittal is required. In his post-trial motion, Boudreau reasserts his trial arguments and further argues that the government failed to prove elements one, two, and three listed above.

The government argues and is correct that a rational trier of fact could find sufficient evidence of each element beyond a reasonable doubt. Ninth Circuit

4

caselaw makes clear that "criminal liability [under 18 U.S.C. § 2422(b)] does not depend on whether the minor actually engaged in criminal sexual activity, but rather whether the defendant sought such sexual activity." *United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004). Similarly, in *United States v. Goetzke*, the Ninth Circuit explained that § 2422(b) is a charge that entails "attempting to persuade, induce, entice, or coerce [a minor] to engage in sexual activity with him—not with attempting to engage in sexual activity with [a minor]." 494 F.3d 1231, 1236 (9th Cir. 2007). It continued that "when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity." *Id.* at 1237.

Here, there was overwhelming evidence presented to the jury that Boudreau initiated the conversation with a minor over the internet, that he described the sexual acts he would like to perform on the minor, and extensively communicated and planned where and when to meet. Thus, the government succeeded in proving beyond a reasonable doubt to a rational juror that Boudreau committed the offense charged in Count I of the Indictment.

**B.    Count 2**

At trial, Boudreau made a series of chain of custody arguments about how the hard drives and computers storing the child sexual abuse material may not have been in his possession as to Count 2—Possession of Child Pornography. The government argues that in addition to a mountain of evidence demonstrating beyond a reasonable doubt that the materials were in Boudreau's possession, Boudreau's counsel presented no evidence to defend nor question the charge at trial. And thus, this argument cannot meet the "high" burden of overturning the jury's verdict based on a sufficiency of evidence challenge. *See United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

## II. Rule 33 Motion

Rule 33 instructs that a district court, on a defendant's motion, may "vacate any judgment and grant a new trial if the interest of justice so requires." Boudreau provides seven justifications for why a new trial must be ordered. The government responds that each reason has either already been litigated and denied, or lacks merit at this stage. For the reasons outlined below, the government is correct.

### A. Venue

Boudreau argues that the venue in this matter was improper and incorporates by reference the argument he made on this issue in an earlier motion to vacate the jury verdict and to dismiss the case. (*See* Doc. 151 at 3 n.2.) That motion was

6

denied on August 30, 2023. (Doc. 164.) For the same reasons as were explained in that Order, venue was proper here.

### B. Voir Dire

Boudreau next argues that the voir dire conducted in this matter was insufficient on the grounds that not enough inquiry was given to asking jurors about specific elements of the crimes charged. This insufficiency, Boudreau argues, limited his ability to properly exercise preemptory challenges. The government argues that Boudreau's voir dire concerns are merely a disguised attempt to preview his trial defense with the prospective jurors. The government has the better argument.

"Voir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion," *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (internal quotation marks omitted), including "great latitude in deciding what questions should be asked," *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). A trial court's failure to ask certain questions does not violate the Constitution unless it "render[s] the defendant's trial fundamentally unfair." *Id.* at 426.

Boudreau fails to demonstrate how the voir dire in this case "render[ed] [his] trial fundamentally unfair." *Id.* His argument rests on the proposition that the Court should have asked more about his trial defense, which in his words is a demonstration of the "distinction, however fine it might be, between being merely

willing or desiring to have sex with a 12-year-old and attempting to entice the child to have sex." (Doc. 151 at 11–12.) But there is no requirement that a Court allow or ask questions exactly as counsel requests. *See Ristiano*, 424 U.S. at 594. And, even if it did, Boudreau did not offer those specific questions to be asked. (*See, generally* Doc. 112.) Additionally, the law grants a defendant ten preemptory challenges. *See* Fed. R. Crim. P. 24(b)(2). In this case Boudreau waived five of those challenges. (*See* Doc. 126-2.) So, the argument has no merit. Thus, the alleged voir dire issues do not require a new trial be ordered.

    **C.    Constructive Amendment to the Indictment**

A "constructive amendment" to an indictment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Davis*, 854 F.3d 601, 603 (9th Cir. 2017). Boudreau argues that the Court "constructively amended" the Indictment in this case by advising the jury that the charge "involved attempted sexual contact when, in fact, he was not so charged." (Doc. 151 at 15.) This concern, Boudreau argues, stems from an interaction between the Court and Prospective Juror 7 after that juror shared that as a first-grade teacher, she had three instances where children in her classroom had been sexually abused by an adult. (Doc. 144 at 3.) The Court followed by asking Prospective Juror 7: "'Attempt,' what do you think about 'attempt'? Because I don't believe there's

8

actual -- well, the charge doesn't involve actual sexual contact." (Doc. 144 at 3.) Boudreau believes that because the exact language of the Indictment is not in the Court's phrasing, the Indictment was constructively amended. But this argument does not hold water, after all the word "attempt" is listed throughout the charging documents and referenced throughout both parties' arguments. (*See* Doc. 2.) Thus, this exchange does not show that the Indictment had been constructively amended.

### D.   Prejudicial Variance of Proof

Boudreau's next argument is that testimony from the government's first witness, Detective Travis Wafstet was "erroneous" and resulted in a "prejudicial variance of proof" by introducing evidence related to the crime of "attempted sexual intercourse without consent." (Doc. 151 at 16.) Boudreau does not cite any law to explain what is required to prove that a prejudicial variance occurred. The government counters that Boudreau's argument rests on the "mistaken impression that . . . the government has somehow bound itself to prove that Boudreau was responsible for the actual or attempted commission of the predicate offense." Again, the government has the better argument.

"A variance in proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment. Reversal is not required unless the defendant

shows prejudice thereby." *United States v. Soto*, 1 F.3d 920, 922 (9th Cir. 1993). Boudreau has not done so. The second element of Count 1 requires that the government prove beyond a reasonable doubt that "if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of the State of Montana." (Doc. 135 at 17.) Importantly, the Ninth Circuit has held that § 2422(b) only requires that the "Government proved the defendant's proposed sexual conduct would have constituted 'a criminal offense' under the laws of an applicable territorial jurisdiction." *United States v. Lopez*, 4 F.4th 706, 723 (9th Cir. 2021). Contrary to Boudreau's belief, the government does not need to prove that the predicate offense occurred. At trial, Detective Wafstet testified that if Boudreau had actually had sex with a real minor, he could have been charged with the crime of sexual intercourse without consent. (*See* Doc. 156 at 419.) Thus, it was necessary to provide evidence that Boudreau "could have been charged" with that crime if the conduct occurred. The government did so, and thus Boudreau's argument fails.

### E. Variance of Proof

Similarly, Boudreau next argues that the government varied the proof necessary to prove the indicted charges, prejudicing Boudreau. Again, Boudreau does not cite any law to explain his understanding of a prejudicial variance. The

government responds, as it did above, that it merely presented evidence necessary to prove the Indictment as charged. The government is again correct.

To make a successful challenge under the theory of a variance of proof, a defendant must show that (1) a variance existed between the indictment and the proof at trial, and (2) the variance affected their substantial rights. *United States v. Morris*, 46 F.3d 410, 414 (5th Cir. 1995). Boudreau does not argue law nor fact to support either requirement. Rather he argues generally that the government put on evidence to support its intention to "Catch a Pedophile."[1] (*See* Doc. 151 at 17.) Instead, the government provided voluminous testimony, mainly from Detective Wafstet, to prove that Boudreau committed the offense charged in the Indictment. Detective Wafstet testified that, posing as "Mia," he used his training and experience to identify Boudreau's sexual interest in "Mia," which Boudreau readily explained and volunteered to her. (*See generally* Doc. 139-8.) This testimony does not indicate that the government attempted to prove Boudreau was "a person with a predicated sexual interest in children," (Doc. 151 at 17), but rather that he was attempting to entice "Mia" into meeting him for the purpose of engaging in sexual activity.

F.   **Jury Instruction**

---

[1] This phrasing is included in quotation marks in Boudreau's briefing; however it is unclear where it originates. Thus, it is also included in quotes in this Order.

For his sixth argument, Boudreau merely states "the jury was improperly instructed by the government's proposed instruction number 37." (Doc. 151 at 20.) Without more specificity as to why the jury instruction was improper, Boudreau's argument cannot be reasonably considered.

## G.   Undue Prejudice

Finally, Boudreau argues that the government offered inaccurate testimony regarding when he accessed child pornography. The government disagrees and is correct. Boudreau's argument boils down to a factual dispute as to when child pornography was accessed. Boudreau posits in newly provided evidence concerning his cell phone, which was available to him before trial, that Detective Wafstet's testimony that Boudreau accessed child pornography around the same time that he texted "Mia" was incorrect. In fact, Boudreau argues, there was a substantial time difference between when he accessed the illegal content and when he texted "Mia" due to what he characterizes as Wafstet's failure to account for time-zone differences when analyzing the data. Assuming Boudreau is correct, it is unclear how this may have prejudiced him. After all, Boudreau is not arguing here that he did not access the materials at all, but rather he accessed the materials hours before messaging "Mia" rather than at the exact same time. He has not made a sufficient demonstration as to why that time difference is material. This is

especially true when the jury heard so much additional evidence that allowed it to reasonably come to a conclusion of guilty on both counts.

## CONCLUSION

Accordingly, IT IS ORDERED that Boudreau's motions (Docs. 149. 150) are DENIED.

DATED this 21st day of September, 2023.

_____
Donald W. Molloy, District Judge
United States District Court